IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 14-40053-01-EFM

BRIAN FORD FAGER,

    *Defendant.*

**MEMORANDUM AND ORDER**

    This matter comes before the Court on Defendant Brian Fager's Motion to Suppress (Doc. 16). Fager contends that a firearm discovered during a frisk should be suppressed because the frisk was not supported by a reasonable suspicion that he was armed and dangerous. The Government argues that the officer's concern for his safety under the circumstances warranted the frisk. The Court agrees and finds that the totality of the circumstances made it reasonable for the officer to search Fager for weapons before turning his back to conduct a search of his vehicle and arrest a passenger for outstanding warrants. Because the officer had reasonable suspicion to support the frisk under Tenth Circuit precedent, the Court denies Fager's motion to suppress.

**I. Factual and Procedural Background**

    On February 10, 2014, Shawnee County sheriff's deputy Justin Dobler stopped Brian Fager for a turn signal infraction in downtown Topeka. In addition to the infraction, the deputy

observed Fager make two "quick and abnormal" lane changes.[1] Fager stopped at an apartment complex in an area that the deputy described as "a very high-crime area for drugs and weapons."[2] The deputy suspected Fager of impaired driving and found the passenger to be uncooperative. The deputy did not understand Fager's speech, which he described as "very, very soft" and passive.[3] As the deputy approached the passenger side door, the passenger leaned forward to block the deputy's view of Fager and dominated the conversation with the deputy. The deputy saw an unopened beer can inside a brown bag near the vehicle's console. A computer check informed the deputy that the passenger had several active warrants out for his arrest. A second officer arrived, and the two officers made plans to order Fager out of the car to investigate him for impaired driving and to arrest the passenger on outstanding warrants.

The deputy spoke with Fager near the rear of the vehicle and determined that there were no indicators that he was impaired. The deputy asked Fager if he would allow him to search his car. Fager said that he "didn't care."[4] The deputy then asked Fager if he wanted to sit in the back of a patrol car or stand in the cold, and Fager said he wanted to stay warm in the patrol car. The deputy told Fager that he was going to frisk him before putting him in the back of the patrol car. Fager complied, and the deputy found a gun in Fager's front waistband.

Fager was indicted as a felon in possession of a firearm. He now seeks to suppress the fruits of the officer's frisk – the gun found in his waistband.

---

[1] Transcript of Motion to Suppress Hearing, Doc. 25, p. 6.

[2] *Id*. at 27.

[3] *Id*. at 7.

[4] *Id*. at 22.

## II. Analysis

Fager's motion to suppress challenges whether the deputy had sufficient reasonable suspicion that Fager was armed and dangerous to justify a frisk for weapons. Specifically, Fager notes that the deputy testified that he had no evidence that Fager was armed and further testified that Fager had not caused him any fear. The Government contends that, out of concern for officer safety, it was reasonable for the deputy to frisk Fager before placing him in the patrol car while searching the vehicle and arresting the passenger.

The Fourth Amendment protects people "against unreasonable searches and seizures."[5] A pat down is a search and therefore must be reasonable.[6] Pat-down searches are constitutional when an officer has reasonable suspicion that an individual is "armed and dangerous."[7] Reasonable suspicion is based on the totality of the circumstances, which includes the officer's knowledge and observations as well as the circumstances in which the officer is working.[8]

The primary justification for a pat-down search is for officer safety.[9] Specifically, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[10] The Tenth Circuit has held that an officer's safety concern justifies a pat down even when an officer has limited "specific information leading him to

---

[5] U.S. Const. amend. IV.

[6] *See Terry v. Ohio*, 392 U.S. 1, 19 (1968).

[7] *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007).

[8] *Id*. at 1083–85.

[9] *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014).

[10] *Terry*, 392 U.S. at 27.

believe that [an individual] was armed or dangerous" and no knowledge of the individual's having possessed a weapon.[11] Certain circumstances may exist to warrant an officer "of reasonable caution to believe that a frisk would be necessary to protect himself."[12] The Tenth Circuit has noted that "'[a]n officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped.'"[13] The Tenth Circuit also has noted that "[t]he purpose of the limited pat-down search is not to discover evidence of a crime, 'but to allow the officer to pursue his investigation without fear of violence.'"[14]

In *United States v. Manjarrez*, the Tenth Circuit upheld a frisk conducted after the defendant consented to a search of his vehicle.[15] The officer had no knowledge of any previous criminal history, and the defendant was not acting suspiciously.[16] The Court concluded that the officer "could not reasonably be expected to leave Defendant in his patrol car, turn his back on Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons."[17] The Court held that the officer's minimally intrusive pat-down was lawful based on the defendant's prior consent to search his car.[18] The Tenth Circuit recently

---

[11] *United States v McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996).

[12] *Id*.

[13] *United States v. Salas-Garcia*, 698 F.3d 1242, 1250 (10th Cir. 2012) (quoting *United States v. Albert*, 579 F.3d 1188, 1194 (10th Cir. 2009)).

[14] *United States v. Manjarrez*, 348 F.3d 881, 886–87 (10th Cir. 2003) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

[15] *Id*. at 884.

[16] *Id*.

[17] *Id*. at 887.

[18] *Id*.

recognized that it has required little beyond an officer having to turn his or her back to a defendant to support the officer's reasonable suspicion.[19]

Here, the deputy obtained Fager's consent to search his car.[20] And the deputy and the backup officer planned to arrest the passenger on outstanding warrants. At the suppression hearing, the deputy explained his concern for his safety and his need to frisk Fager before conducting the search and the arrest:

> With there only being two officers at that time, before our third officer showed up, if he's going to consent to search the vehicle and then go in a patrol car, make sure he's got no weapons on him, due to the fact that we're going to be taking—myself was going to be completely looking away from both of those people while searching the vehicle, and the last thing we want to have happen is an attack to happen on another deputy and then draw the third officer away from the second occupant to help him out. It would just be a bad situation.[21]

As in *Manjarrez*, the deputy could not reasonably be expected to leave Fager in his patrol car, turn his back on Fager, insert his head into Fager's car, and search the car or arrest the passenger without first checking Fager for weapons.[22] Because of the presence of the passenger, the presence of more than one officer does not make the situation any less dangerous than the situation in *Manjarrez*. As in *Manjarrez*, the record shows that the deputy was concerned for his safety and wanted to conduct the search of Fager's car without fear of violence.[23]

Fager correctly points out that the deputy testified that Fager had not caused him any fear or had given any indication that he might be dangerous. Such was the case in *United States v.*

---

[19] *Garcia*, 751 F.3d at 1147 (citing *McRae*, 81 F.3d at 1536; *Manjarez*, 348 F.3d at 887).

[20] In Fager's post-hearing brief, he concedes that he gave consent to search the vehicle. Defendant's Post-Hearing Brief on Motion to Suppress, Doc. 26, p. 1.

[21] Transcript of Motion to Suppress Hearing, Doc. 25, p. 20.

[22] *See Manjarrez*, 348 F.3d at 887.

[23] *See id.*

*McRae*, when an officer had no specific information that led him believe than the defendant was armed or dangerous and did not testify that he felt that his safety was in jeopardy.[24] But the Tenth Circuit held that an officer may have reasonable suspicion to support a frisk without specifically testifying that he believed that the defendant was armed or dangerous. Rather, the objective standard asks "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[25]

Here, the facts available to the deputy at the time of the search were that Fager had agreed to wait in the back of a patrol car while his car was being searched and his passenger was being arrested for several warrants for unknown crimes. Both Fager and the passenger had exhibited unusual behavior after being stopped. The patrol car was parked behind Fager's car so that the officers' backs would be turned to him while searching his car and arresting the passenger. And the parking lot where this was taking place is a high-crime area for drugs and weapons. Considering the totality of the circumstances, the Court finds that it was reasonable for the deputy to first check Fager for weapons before leaving him in the patrol car, turning his back to him, searching the car, and arresting the passenger.

Fager relies on support from other jurisdictions and attempts to discount Tenth Circuit precedent. Fager argues that *McRae* was incorrectly decided and that the relevant passage in *Manjarrez* was dicta, but Fager concedes that this Court is bound by Tenth Circuit precedent. Indeed, the Tenth Circuit recently noted that little more beyond an officer having to turn his back to a defendant is required to support the officer's reasonable suspicion for a search for

---

[24] *See McRae*, 81 F.3d at 1536.

[25] *Id*. (quoting *Terry*, 392 U.S. at 21–22).

weapons.[26] As this Court is bound by Tenth Circuit precedent, the Court finds that the deputy had reasonable suspicion to support a frisk under these circumstances. Therefore, Fager's motion to suppress is denied.

Fager's alternate argument that the deputy should have first informed Fager that his consenting to a search of his vehicle would result in a frisk is without legal support and therefore fails. Fager fails to cite any binding legal authority for the proposition that an officer must advise a person that he will be patted down for officer safety if the person agrees to a search of his vehicle. Thus, the Court is not persuaded that such a warning is required.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 16) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 6th day of November, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[26] *See Garcia*, 751 F.3d at 1147 ("In the two Tenth Circuit cases that have considered an officer's having to turn his or her back to a defendant, we required little beyond this concern to support the officer's reasonable suspicion.").